# Exhibit A

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
WINCHESTER DIVISION

| | | |
|---|---|---|
| CHANCE 919 AL, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 4:13cv00086 |
| | ) | |
| APEX CONSTRUCTION SERVICES, | ) | |
| LLC, GENE RITZ, TRAVIS RITZ, and | ) | |
| GREG BROCK, | ) | |
| | ) | |
| Defendants. | ) | |

**DECLARATION OF LUCIAN T. PERA**

LUCIAN T. PERA states as follows:

1. Upon the request of counsel for Plaintiff Chance 919 LLC, I have prepared this declaration concerning my opinions and conclusions in this matter.

2. Specifically, in connection with recent briefing by the parties concerning the alleged status of certain emails produced by Defendant Apex Construction Services, LLC, ("Apex") as attorney-client privileged, I have been asked to evaluate and offer my opinion concerning the allegation by Apex and Defendant Greg Brock that counsel for Plaintiff violated Tennessee Rule of Professional Conduct 4.4(b) in their handling of these emails. In my opinion, as set out more fully below, and based on the facts as I understand them, counsel for Plaintiff did not violate Tennessee Rule of Professional Conduct 4.4(b) or any other Tennessee lawyer ethics rule in their handling of the emails produced by Apex and included on a copy of an Apex computer hard drive produced by Apex in discovery in this case.

## QUALIFICATIONS

3. I am an attorney licensed to practice and practicing law in Tennessee. I have been continuously licensed in Tennessee since 1985. I am a partner in the law firm of Adams and Reese LLP, resident in the firm's Memphis office, and I have been a partner in the firm since May 1, 2006. From September 1986 through April 30, 2006, I practiced law with Armstrong Allen, PLLC, and I was a partner or member of that firm from January 1994 through April 2006. From 1985 through 1986, I served as a law clerk to Judge Harry W. Wellford of the United States Court of Appeals for the Sixth Circuit. A copy of my current curriculum vitae is attached as Exhibit A.

4. For many years, I have devoted significant time and attention to the study of matters relating to legal ethics, professional responsibility, and related topics concerning the practice of law. For more than twenty years, I have counseled lawyers practicing with my law firm about such matters and represented and counseled other lawyers, law firms, and their clients about such matters as a part of my practice.

5. I also teach and write on these subjects. Most of the seminars that I have presented in recent years, as well as most of the articles that I have authored or contributed to, are listed on the attached curriculum vitae.

6. I have served on several bar association committees working in this field. Among these is the Tennessee Bar Association Standing Committee on Ethics and Professional Responsibility, serving as Vice Chair from 1995 until 2000, Chair from 2000 through 2009, and as a member since 2009. Under my leadership, this committee led the TBA's successful efforts to revise Tennessee's legal ethics rules, resulting in the Tennessee Supreme Court's 2002 adoption of a version of the ABA Model Rules of Professional Conduct and its 2009 order

2

largely conforming Tennessee's legal ethics rules to the most current version of the ABA Model Rules. In addition to these two major revisions, since 1995, this TBA Committee has worked on many other proposals before the Tennessee Supreme Court concerning the ethics rules and lawyer regulation in Tennessee, including the 2010 revisions to these rules that led to the adoption of the current Tennessee Rule of Professional Conduct 4.4(b).

7.  From 1997 through 2002, I was a member of the thirteen-person American Bar Association Special Commission on the Evaluation of the Rules of Professional Conduct (also known as the "Ethics 2000 Commission"), which was charged with reviewing the ABA Model Rules of Professional Conduct and submitting a report to the ABA House of Delegates concerning any recommended changes. After two sessions of debate, the ABA House of Delegates approved most of Ethics 2000's recommended changes to the ABA Model Rules of Professional Conduct in February 2002.

8.  I am familiar with the rules of ethics and other law related to the practice of law in Tennessee, including the rules and law governing client confidentiality, attorney-client privilege, and a lawyer's fiduciary duty toward clients. My opinions and conclusions stated in this affidavit reflect the application of these rules and related law.

9.  I have been retained to serve as an expert in a number of lawyer discipline, legal malpractice, disqualification, and other matters involving lawyer conduct. In many of these engagements, I have provided testimony by affidavit or otherwise for use in state and federal courts. During approximately the last four years, I have testified as an expert in trial or deposition in the following cases:

    a.  *In re: The Honorable John A. Bell*, No. M2009-02115-CJ-CJ-CJ, Tennessee Court of the Judiciary.
    b.  *Cairo 70 Investors, LLC v. John Patrick Roberts*, No. CT-005079-08-IX, Shelby County, Tennessee, Circuit Court.

c. *Fair v. Methodist Healthcare System*, No. CT-006385-04-IV, Shelby County, Tennessee, Circuit Court.

d. *In re: David Alan Gold*, Docket No. R-184-5-SG, Tennessee Board of Professional Responsibility (lawyer reinstatement proceeding).

e. *State v. McKinney*, Indictment No. 98-01434-35, Shelby County, Tennessee, Criminal Court.

f. *In re: Estate of Colleen H. McLemore; Gerald D. McLemore v. Billy M. McLemore*, No. 07-01-0141, Chancery Court of DeSoto County, Mississippi.

g. *Rimmer v. State of Tennessee*, Case Nos. 98-01034, 97-02817 & 98-01033, Shelby County, Tennessee, Criminal Court.

h. *TurboCombustor Technology, Inc. v. Dinsmore & Shohl, LLP*, No. A0804326, Court of Common Pleas, Hamilton County, Ohio.

i. *Potash v. Duane Morris, LLP*, No. 24-C-12-004246, Circuit Court for Baltimore City, Maryland.

j. *Holt v. Snider*, No. CT-002694-11-II, Shelby County, Tennessee, Circuit Court.

k. *Alliman v. Freed*, No. 18048, Chancery Court of Monroe County, Tennessee.

l. *Wilson v. Freed*, No. 18047, Chancery Court of Monroe County, Tennessee.

## **INFORMATION CONSIDERED**

10. In preparing this declaration, and for purposes of forming my opinions and conclusions, I have reviewed and relied upon the following documents provided to me by Plaintiff's counsel:

a. Pleadings and papers filed or served in this case, including:
   i. Plaintiff Chance 919 AL, LLC's Memorandum of Law in Support of Its Motion for Determination of Attorney-Client Privilege under Rule 26(b)(5)(B) (Dkt. 58-1; including Ex. C and D).
   ii. Apex Construction Services, LLC and Gene Ritz's Brief Regarding Privileged Emails (Dkt. 59).
   iii. Greg Brock's Initial Brief Regarding Privileged Email (Dkt. 60; including Ex. I, Affidavit of John Gregory Brock, Dkt. 60-1).
   iv. Greg Brock's Responses to the Plaintiff's First Interrogatories.
   v. Joint Discovery Plan and Rule 26(f) Conference Report (Dkt. 41).
   vi. Deposition of John Gregory Brock (Aug. 13, 2015).

b. Correspondence from Kevin H. Hudson to Opposing Counsel dated Sept. 30, 2014.

c. Correspondence from H. Frederick Humbracht, Jr. to Opposing Counsel dated Oct. 3, 2014.

d. Correspondence from Damon Gunnels to Opposing Counsel dated Nov. 3, 2014.

e. Correspondence from Damon Gunnels to Opposing Counsel dated Nov. 5, 2014.

f. Correspondence from H. Frederick Humbracht, Jr. to Opposing Counsel dated Nov. 7, 2014.

In addition to the documents listed above, I also discussed the facts of this matter with counsel for Plaintiff.

11. In order to form opinions and reach conclusions in this matter, I have assumed that the following facts are true:

a. Apex produced its entire server, without conducting a review for privileged information.

b. The Apex server was used by both Defendants Ritz and Brock.

c. The parties addressed the potential for privileged information on the Apex server through a provision in the Joint Discovery Plan and Rule 26(f) Conference Report, paragraph 9, as follows: "The parties agreed that Plaintiff would be allowed to use a vendor of its choosing to extract the documents and information responsive to its Requests for Production from the hard drive setting aside any potentially privileged materials from the attorneys for the parties in this matter."

d. Defendant Brock provided a verified interrogatory response to Plaintiff's No. 13 that stated: "Counsel for Mr. Brock understand that all relevant documents regarding this lawsuit are contained on a hard drive, and that a copy of that hard drive has already been produced to the Plaintiff. Mr. Brock also possesses a copy of that hard drive.

e. None of the Defendants ever sought to assert privilege over the Apex server after it was produced, and the only issue of confidentiality that was raised involved Defendant Brock's actions as a bank director.

f. Plaintiff did not tender any of the Discovery Emails to a witness during depositions, but, instead, marked the Discovery Emails during Defendant Brock's deposition.

g. Plaintiff provided the Discovery Emails to Defendants to ascertain Defendants' position on whether they viewed any or some of the Discovery Emails as privileged.

h. Defendants objected in whole or in part to all of the Discovery Emails as privileged.

i. Based on Defendants' objection, the parties put the Discovery Emails into an envelope and kept them under seal with the court reporter.

j.  After the deposition of Defendant Brock, Plaintiff brought the issue of the Discovery Emails to the Court's attention, both as to the issue of privilege and as to its implications in completing discovery.

k.  After a call with the Court, Plaintiff again attempted to confer with Defendants, specifically raising issues involving the lack of confidentiality of the Apex sever and the crime-fraud exception to privileged.

l.  Defendants declined to substantively address Plaintiff's effort to confer by letter.

m.  Defendants filed briefs with the court that addressed their ethics contention and the confidentiality of the Apex server, but that, to date, they have not addressed the crime-fraud issues raised by Plaintiff's conferral letter or initial brief to the court.

While I have not made an effort to verify these assumptions of fact, based on my review of the facts in this matter, and based on the information and documents that I have been provided, I believe these assumptions are reasonable and appear to me to be supported by evidence.

## OPINIONS AND CONCLUSIONS

12. Based on the facts as I understand them, in my opinion, counsel for Plaintiff did not violate Tennessee Rule of Professional Conduct 4.4(b) or any other Tennessee lawyer ethics rule in their handling of the emails produced by Apex and included on a copy of an Apex computer hard drive produced by Apex in discovery in this case.

13. In 2010, the Tennessee Supreme Court adopted revisions to Tennessee's lawyer ethics rules to establish specific guidance for lawyers who come into possession of attorney-client privileged and otherwise client confidential information or documents. These revisions broadly follow earlier guidance provided by the Board of Professional Responsibility of the Supreme Court of Tennessee in a Formal Ethics Opinion. Following this revision and since that time, Rule 4.4 has provided as follows:

> **RULE 4.4: RESPECT FOR THE RIGHTS OF THIRD PERSONS**
> . . . .
> (b) A lawyer who receives information relating to the representation of the lawyer's client that the lawyer knows or reasonably should know is protected by RPC 1.6

(including information protected by the attorney-client privilege or the work-product rule) and has been disclosed to the lawyer inadvertently or by a person not authorized to disclose such information to the lawyer, shall:

(1) immediately terminate review or use of the information;

(2) notify the person, or the person's lawyer if communication with the person is prohibited by RPC 4.2, of the inadvertent or unauthorized disclosure; and

(3) abide by that person's or lawyer's instructions with respect to disposition of written information or refrain from using the written information until obtaining a definitive ruling on the proper disposition from a court with appropriate jurisdiction.

**Comment**

[2] The duties imposed by paragraph (b) on lawyers who know or who reasonably should know that they have received information protected by RPC 1.6 that was disclosed to them inadvertently or by a person not authorized to disclose the information to them reflect the importance of client-lawyer confidentiality in the jurisprudence of this state and the judgment that lawyers in their dealings with other lawyers and their clients should take the steps that are required by this Rule in the interest of protecting client-lawyer confidentiality even if it would be to the advantage of their clients to do otherwise.

[3] This Rule, however, does not prohibit the receiving lawyer from seeking a definitive court ruling as to the proper disposition of such information, including a ruling regarding whether the disclosure effects a waiver of the attorney-client privilege or work-product rule. In making any disclosure to a court to obtain a ruling regarding disposition of the information, any disclosure of the information should be made in a manner that limits access to the information to the tribunal, and appropriate protective orders or other arrangements should be sought by the lawyer to the fullest extent practicable.

Tenn. Sup. Ct. R. 8, RPC 4.4. Thus, if certain triggering requirements are met, the Rule requires that a lawyer take the three steps set out in the numbered sub-sections.

14. The first of these two triggering requirements is that the lawyer receives information relating to his representation that the lawyer "knows or reasonably should know" is protected confidential under Tennessee Rule of Professional Conduct 1.6, including information that is attorney-client privileged or protected by the work product doctrine. The words "knows" and "reasonably should know" are defined terms under the Tennessee Rules of Professional Conduct, which provide as follows:

(f) "Knowingly," "known," or "knows" denotes actual awareness of the fact in question. A person's knowledge may be inferred from circumstances.

….

(j) "Reasonably should know," when used in reference to a lawyer, denotes that a lawyer of reasonable prudence and competence would ascertain the matter in question.

Tenn. Sup. Ct. R. 8, RPC 1.0(f) and (j). Thus, for the first triggering requirement of Rule 4.4(b) to be met, a lawyer must have a significant level of knowledge – "knows or reasonably should know" – that the information is privileged or otherwise confidential.

15. In my opinion, it is not at all clear that counsel for Plaintiff knew or reasonably should have known that the emails at issue here were, as Apex and Brock now contend, attorney-client privileged. For example, the hard drive produced by Apex that included these emails was produced by Apex's counsel, after some significant delay, without any specific statement or claim that it did or might contain privileged information. No privilege log was produced by Apex (*see* Fed. R. Civ. P. 26(b)(5)(A) (requiring production of privilege log)), nor did counsel for Apex identify any particular documents or kinds or classes of documents on the hard drive, or likely to be on the hard drive, that were or might be privileged or otherwise confidential. Further, despite the obligation of counsel for a party producing information in discovery to state a claim of privilege if they are aware of one even after documents are produced (*see* Fed. R. Civ. P. 26(b)(5)(B) (post-production obligation to notify of production of privileged information)), neither Apex nor its counsel did so.

16. Further, based on my understanding of the facts, Plaintiff has raised legitimate and serious issues concerning whether the emails in question are covered by the attorney-client privilege. (Of course, if they are not privileged, counsel for Plaintiff have clearly not violated Rule 4.4(b).) These serious issues include (1) whether some of the emails met the requirement for coverage by the attorney-client privilege that they be confidential when made, because they

8

had been stored by an individual on a third-party's server, hard drive, or email system;[1] (2) whether Brock was an agent of Apex with whom Apex could communicate within the protection of the privilege; (2) whether some of these emails fell within the crime-fraud exception to the privilege; and (3) whether the manner of their production by Apex waived any privilege that may have attached to them. Based on one or a combination of these issues, counsel for Plaintiff could have reasonably concluded that the emails at issue were not protected by the attorney-client privilege. Regardless of whether they reached a firm conclusion that these emails were not protected by privilege, counsel for Plaintiff clearly had more than enough evidence to come to the good-faith conclusion that their client should present these issues to the court for determination.

17. In their briefing on these issues, Apex and Brock have pointed to the following language in the parties' January 15, 2015, Joint Discovery Plan and Rule 26(f) Conference Report (Dkt. 41 ¶ 9):

> The parties agreed that Plaintiff would be allowed to use a vendor of its choosing to extract the documents and information responsive to its Requests for Production from the [Apex] hard drive setting aside any potentially privileged materials from the attorneys for the parties in this matter.

Apex and Brock appear to suggest that this language clearly established a standard of conduct for handling potentially privileged information produced in this case – one that counsel for Plaintiff violated. I disagree. In my opinion, the language used in this Discovery Plan is vague at best. It appears to mean that the parties agreed on a broad and general protocol for handling privileged documents that might be produced inadvertently – one with which counsel for Plaintiff did

---

[1] This issue is still a fairly novel one, addressed by a few courts in the context of an employee's email correspondence with her lawyer that is stored on her employer's computer or computer system. *See* Paul Rice, *Attorney-Client Privilege in the United States* § 6.8 (2014). The courts are not of one mind about this issue and, to my knowledge, there is no clear Tennessee law on this issue. Moreover, Brock's relationship with Apex appears to have been uncertain, and certainly appears to have changed over time, but he appears not to have ever been an employee of Apex.

comply. Regardless of what this language does mean, however, this language clearly does not address or explicitly require notification of the owner of the privilege or limit nor does it expressly bar the use of the materials. Nevertheless, as discussed below, in my opinion, counsel for Plaintiffs did not, in fact, violate any restriction imposed by the language requiring them to "set aside" the emails in question; in fact, that is exactly what they did.

18. Moreover, although the Federal Rules of Civil Procedure do allow litigants to ask a district court to enter an order regulating how arguably privileged documents that are inadvertently produced are handled by parties, or to memorialize in an order an agreement by parties on these subjects (*see, e.g.*, Fed. R. Evid. 502), that was not done in this case.

19. The second of the two triggering requirements under Rule 4.4(b) is that the privileged or confidential information received by the lawyer "has been disclosed to the lawyer inadvertently or by a person not authorized to disclose such information to the lawyer." In my opinion, even if the first triggering requirement of Rule 4.4(b) (*see supra* ¶ 14) were met here, it has not been demonstrated that this second requirement was met. Specifically, neither Apex nor Brock have offered any evidence that the hard drive or any or its contents were produced "inadvertently." As discussed above, despite the clear obligation on Apex (*see* Fed. R. Civ. P. 26(b)(5)) to identify and withhold any document it claimed as privileged, it failed to do so, either before or after the production of the hard drive. Nothing in the language of the Discovery Plan relieved Apex and its counsel of their obligations concerning privileged information under Fed. R. Civ. P. 26(b)(5). It also appears that Apex consciously chose not to have any privilege review performed on the contents of the hard drive. Neither Apex nor its counsel have offered any of the proof that customarily accompanies a claim of inadvertent production of privileged documents or information; indeed, neither Apex nor its counsel have offered any evidence to excuse or explain

10

how or why these allegedly privileged documents were produced. It is also clear that the hard drive produced to Plaintiff was a copy of a drive or data owned and controlled by Apex, and this was made known to counsel for Plaintiff; thus, neither Plaintiff nor its counsel had any reason whatsoever to believe that Apex was "not authorized to disclose such information," as Rule 4.4(b) provides. Viewed from the perspective of counsel for Plaintiff, nothing in the circumstances of the production of this hard drive should have led counsel for Plaintiff to believe that the production of the emails at issue was inadvertent or unauthorized.

20. Despite the fact that, on the facts present here, counsel for Plaintiffs had a basis for believing that Rule 4.4(b) did not apply to these emails, in my opinion, they complied with the three numbered requirements of the Rule, and otherwise complied with their ethical obligations.

21. Based on the facts as I understand them, counsel for Plaintiff did, in fact, identify and segregate the emails in question, cease their review and use, notify counsel for the owners of the possible privilege, and approach this court for a determination and guidance. Counsel for Plaintiff clearly segregated these emails before the Brock deposition. Counsel for Plaintiff did not use these emails in their conduct of the litigation, including during their examination of witnesses in deposition. Counsel for Plaintiff did notify Apex and Brock, during the deposition of Greg Brock on August 13, 2015, of the identity of these emails and, at that time, they specifically asked for guidance from counsel for Apex and Brock concerning whether their clients contended that these emails were privileged or confidential. While awaiting a resolution of these issues by agreement or by the court, counsel for Plaintiff proposed that the documents be made a part of the record, but placed under seal (by placing them in a sealed envelope exhibited to the deposition) for possible review by the court. Counsel for Plaintiff then unsuccessfully

attempted to engage counsel for Apex and Brock concerning their legal and factual contentions about these emails, while continuing not to use or introduce these emails in the case. Counsel for Plaintiff then approached the court for a ruling on whether the documents were privileged. These steps – terminating review and ceasing or avoiding use; notifying the potential holder of the privilege; and either abiding by the privilege holder's instructions or seeking a determination from a court – are the precise steps identified as appropriate and required in Rule 4.4(b), and counsel for Plaintiff performed them.

22. Apex and Brock appear to suggest that counsel for Plaintiff violated Rule 4.4(b) by reviewing the emails at issue. I disagree with that suggestion. Rule 4.4(b) clearly permits a lawyer in receipt of documents or information that might be subject to the requirements of Rule 4.4(b) to review those documents or that information sufficiently to fully evaluate whether the documents or information is privileged or otherwise confidential. Were that not the case, no lawyer could ever determine whether a document he received met the triggering requirement of the Rule. Moreover, the "set aside" protocol on which the parties agreed in their Discovery Plan clearly implies that counsel can and must review a document before deciding to "set aside" the document as potentially privileged. A lawyer reviewing a document for purposes of determining whether it is, or might be, privileged may well be required to fully read a document to reach a reasoned conclusion, given the complexity of the law of attorney-client privilege, exceptions to privilege, and waiver of privilege.

23. Apex and Brock also seem to imply that the mere presence of one or more lawyers as addressees of these emails automatically means that they are privileged and, thus, that any lawyer reviewing them should have immediately stopped reading upon seeing any lawyer's name on these emails. I disagree. Here, for example, Apex and Brock rely on the "common-

interest" exception to waiver of the attorney-client privilege, and Plaintiff relies on the crime-fraud exception to the privilege. Common-interest communications often flow through counsel and it would not be surprising that a communication where that exception was claimed, but later rejected by a court, might include counsel in the communication. Further, by definition, a communication that is claimed to be covered by the crime-fraud exception, and thus not privileged, would involve a communication with a lawyer.

24. In my opinion, counsel for plaintiffs acted in a timely fashion, in compliance with Rule 4.4(b), in identifying and producing to counsel for Apex and Brock the emails at issue.

## COMPENSATION

25. I have agreed to be compensated for my work in this matter on the basis of my discount hourly rate of $430 an hour for my time, plus expenses, and plus additional charges for the assistance of any other attorneys in my office (*e.g.*, some limited legal research) at my law firm's discount rates.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing document is true and correct.

_____
LUCIAN T. PERA
Date: 9-4-15

39442750_1